**STATE of Maine**

v.

**Charles CHAPIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 1, 1992.

Decided July 1, 1992.

Janet Mills, Dist. Atty., Margot Joly, Asst. Dist. Atty., Farmington, for plaintiff.

Walter Hanstein, Cloutier, Joyce, Dumas & David, Livermore Falls, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Charles Chapin appeals his conviction in Superior Court (Franklin County, *Browne, A.R.J.*) of operating a motor vehicle after his license had been revoked for being an habitual offender. 29 M.R.S.A. § 2298 (Pamph.1991). In his appeal, Chapin contends that the stop of his vehicle leading to his arrest was not based on a reasonable and articulable suspicion and that the mandatory minimum jail sentence imposed on him by the court violated his constitutional rights to equal protection and due process. We discern no error in the conviction or in the sentencing and we affirm the judgment.

In mid-January 1991, Chapin, whose license had been revoked for being an habitual offender, *see* 29 M.R.S.A. §§ 2292, 2293

(Pamph.1991),[1] was operating his vehicle on High Street in Farmington when he was pursued and stopped by Officer Peter Barton of the Farmington Police Department. The stop led to Chapin's arrest for violation of 29 M.R.S.A. § 2298. Chapin moved in the Superior Court to suppress evidence obtained from the stop, contending that the officer's suspicion that he was the operator of the vehicle, although articulated, was not reasonable, and that his rights under the Fourth Amendment to the United States Constitution had been violated.

Following the denial of his motion to suppress (*Chandler, J.*), Chapin entered a conditional guilty plea pursuant to M.R.Crim.P. 11(a)(2), and was sentenced to 180 days in jail, with all but sixty days suspended, and placed on probation for a period of one year. The unsuspended portion of his sentence was imposed pursuant to 29 M.R.S.A. § 2298(2)[2] because Chapin had a previous conviction for operating under the influence. This appeal followed.

## MOTION TO SUPPRESS

At the hearing on Chapin's motion to suppress the evidence showed that Officer Barton had information from two sources that Chapin was an habitual offender, that his license had been revoked, and that he had been operating his vehicle in the Farmington area. Officer Barton

testified that he recognized and stopped Chapin's vehicle after passing it on High Street.

For an officer to make a valid investigatory stop, the "officer must act on the basis of 'specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant the intrusion.'" *State v. Dulac*, 600 A.2d 1121, 1122 (Me.1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). The court must find that the officer actually entertained the suspicion and that the suspicion was reasonable under the circumstances. *State v. Chapman*, 495 A.2d 314, 317 (Me.1985). The court's finding that a stop is reasonable is reviewed only for clear error. *Dulac*, 600 A.2d at 1122.

In denying the motion to suppress, the court concluded that Officer Barton's knowledge that the vehicle belonged to Chapin and that Chapin's right to operate had been revoked, coupled with the information that Chapin had been operating the vehicle in recent days, constituted sufficient reasonable suspicion to justify Barton's pursuit and stop of Chapin's vehicle when he observed it being operated in Farmington. The court's finding that Officer Barton's articulated suspicion that Chapin was operating his vehicle in violation of

---

1. 29 M.R.S.A. § 2292 (Pamph.1991), states in pertinent part:

    An habitual offender is any person, resident or nonresident, whose record, as maintained in the office of the Secretary of State, shows that the person has accumulated convictions or adjudications for separate and distinct offenses described in subsection 1, 2 or 3, committed within a 5–year period, provided that, where more than one included offense is committed on the same day, multiple offenses shall be treated for the purposes of this chapter as one offense:

    **1. Three or more convictions.** Three or more convictions or adjudications, singularly or in combination, of any of the following separate and distinct offenses arising out of separate acts:

    . . . .

    **B.** Operating or attempting to operate while *under* the influence of intoxicating liquor or drugs or with a blood-alcohol level of 0.08% or more[.]

29 M.R.S.A. § 2293 (Pamph.1991) states:

   The Secretary of State shall revoke, without preliminary hearing, the license, permit or privilege to operate a motor vehicle of any person defined as an habitual offender as set forth in section 2292.

2. At the time of Chapin's offense, 29 M.R.S.A. § 2298(2) provided:

   Violation of this section is a Class C crime. If the person is defined as an habitual offender under section 2292, subsection 1, and one or more of the convictions or adjudications defining that person as an habitual offender pursuant to section 2292, subsection 1, paragraph B [conviction of OUI], the following mandatory minimum penalty, which shall not be suspended, shall be imposed: A minimum term of imprisonment of not less than 60 days.

The mandatory minimum provision was repealed in 1992 by P.L.1991, ch. 293, § 5, effective October 9, 1991.

the law was a reasonable one, is not clearly erroneous.[3]

## SENTENCE

Chapin contends that section 2298(2) of 29 M.R.S.A., pursuant to which he was sentenced to a mandatory minimum sixty days in jail because he had a previous OUI conviction, violated his constitutional rights to equal protection and due process. His contentions are without merit.

### Equal Protection

■ The equal protection provisions of the Maine and United States constitutions[4] do not require that the law operate uniformly on all individuals " 'as long as those affected are reasonably different from those excluded and there is a rational basis for treating them differently.' " *Brann v. State*, 424 A.2d 699, 703 (Me.1981) (quoting *Nadeau v. State*, 395 A.2d 107, 113 (Me. 1978)). "[A]n equal protection challenge to a difference in treatment requires a showing that the state's classification is arbitrary or irrational. A difference in treatment is constitutional 'if facts may reasonably be conceived to justify the distinction.' " *Dishon v. Maine State Retirement Sys.*, 569 A.2d 1216, 1217 (Me.1990) (quoting *McNicholas v. York Beach Village Corp.*, 394 A.2d 264, 269 (Me.1978) (other citations omitted)).

Chapin does not dispute that the rational basis test applies, but rather he contends that there is no rational basis, for purposes of mandatory minimum sentencing, for the State to differentiate the case of an habit-ual offender who has been previously convicted of operating under the influence from an habitual offender whose prior convictions do not include OUI. We disagree.

It cannot be seriously disputed that operating a motor vehicle while under the influence of alcohol creates a particularly severe highway hazard. *State v. Leighton*, 551 A.2d 116, 118 (Me.1988). "The situation ... of the drunk driver occurs with tragic frequency on our Nation's highways. The carnage caused by drunk driving is well documented and needs no detailed recitation here." *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). Because of the high incidence of death, injury, and property damage caused by drunk drivers, *see Leighton*, 551 A.2d at 118 n. 2, the State has an "undeniably strong interest in protecting the public from the threat of drunk drivers on our highways...." *Id.* at 118. That interest is certainly strong enough to provide for a mandatory minimum sentence of sixty days for a violation of the law prohibiting operation of a vehicle by an habitual offender, a Class C offense,[5] when the operator has previously been convicted of operating under the influence.

### Due Process

■ Chapin has also made the claim that the sixty days imposed as a mandatory minimum sentence violated his due process rights. His claim is without merit. Exercise of the State's police power interest must conform to the following requirements:

**3.** At the hearing on the motion to suppress, Officer Barton also testified that he recognized the driver of the vehicle as having features similar to Chapin's. Chapin contends that that testimony is incredible. We need not address Chapin's contention, however, because the court discounted that part of Officer Barton's testimony.

**4.** Me. Const. Art. 1, § 6–A states in relevant part:
No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws.... U.S. Const. Amend. XIV, § 1 states in relevant part:
No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**5.** 29 M.R.S.A. § 2291 (Pamph.1991) declares it to be the policy of the State to protect motorists on our public highways, to deny the privilege of operating on our highways to those who have demonstrated indifference to the safety of others and to the motor vehicle laws, and to discourage repeat violations. We have said that "Maine has a legitimate interest in the use of imprisonment sanctions to deter prospective motor vehicle operators from flouting civil disability classification of an habitual offender ... to assure maximum safety for all other travelers on the public highways of the State...." *State v. O'Neill*, 473 A.2d 415, 419 (Me.1984).

1. The *object* of the exercise must be to provide for the public welfare.

2. The legislative *means* employed must be appropriate to the achievement of the ends sought.

3. The *manner of exercising* the power must be not unduly arbitrary or capricious.

*State v. Eaton,* 577 A.2d 1162, 1165–66 (Me.1990) (quoting *Danish Health Club v. Town of Kittery,* 562 A.2d 663, 665 (Me. 1989) (emphasis in original)).

It is clear that the object of the habitual offender law is to promote highway safety by the means of keeping unsafe operators off the highways. In particular, the mandatory minimum sentence serves to insure that those habitual offenders who have shown a propensity to endanger our highways by operating a vehicle while under the influence are strongly discouraged from continuing to operate while in an habitual offender status. Chapin has failed in his burden to establish "the complete absence of any state of facts that would support the need for the enactment of the statute." *Danish Health Club,* 562 A.2d at 665.

Moreover, Chapin makes no claim that he was denied *procedural* due process because the State enacted and enforced the habitual offender statute in an arbitrary or capricious manner. *See Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475; 483 (Me.1982).

The entry is:

Judgment affirmed.

All concurring.