Daniel P. GUIGGEY

v.

BOMBARDIER, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 8, 1992.
Decided Nov. 2, 1992.

Patrick E. Hunt, Island Falls, for plaintiff.

James B. Haddow, Petruccelli & Martin, Portland, for Bombardier.

David M. Hirshon, Thompson, Willard, McNaboe, Ashley & Bull, Portland, for Norsworthy's.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Plaintiff Daniel P. Guiggey appeals from two orders of the Superior Court (Aroostook County, *Pierson, J.*) granting summary judgment in favor of defendants Bombardier and Norsworthy's Sales and Service, Inc. (Norsworthy's) in a products liability claim. He contends that genuine issues of material fact remain and we agree in part. We affirm the summary judgment granted in favor of Bombardier but vacate certain claims asserted against Norsworthy's.

On October 25, 1988, Daniel Guiggey purchased from Norsworthy's a used 1987 Ski–Doo Snowmobile manufactured by Bombardier. After receiving personal injuries in an accident that occurred while

he was operating the snowmobile, plaintiff brought suit against the seller and the manufacturer. Bombardier moved for summary judgment and asserted in a statement of undisputed fact that "[no] defective condition in the Snowmobile caused or contributed to" any damages. Plaintiff failed to file a counter statement of material facts in opposition to the motion for summary judgment in accordance with M.R.Civ.P. 7(d)(2).[1] Therefore, plaintiff is deemed to have admitted all facts alleged in Bombardier's statement of undisputed facts, *see Gerrity Company, Inc. v. Lake Arrowhead Corp.*, 609 A.2d 293 (Me.1992), and summary judgment was appropriately granted in its favor.

The claims against Norsworthy's, however, present greater difficulties. The facts as developed for purposes of summary judgment may be summarized as follows: Norsworthy's made some modifications to the snowmobile, including reducing the length of the throttle springs, prior to selling the machine to plaintiff. Plaintiff's contact with Norsworthy's before the purchase of the snowmobile was limited to one telephone call and two visits to the shop. The telephone conversation was limited to a discussion of whether the snowmobile was still available for sale. During his first visit, plaintiff testified that "one of the people" at the shop said that "it runs nice." During his second visit, plaintiff spoke briefly with "the guys out in the shop" who commented that "Randy took real good care of it" and "it will go good."

Plaintiff was injured on December 24, 1988 while driving the snowmobile. Although there was evidence that he was drinking, he contends that the throttle stuck and he was unable to slow or stop the snowmobile.

The Superior Court granted a summary judgment, finding no genuine issue of material fact. We view the evidence before the court in the light most favorable to the party against whom the judgment was granted to determine if the trial court committed an error of law. *H.E.P. Development Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me.1992). Summary judgment in a defendant's favor is proper when the plaintiff has the burden of proof on an essential element at trial and it is clear that the defendant would have been entitled to a directed verdict at trial if the plaintiff presented no more evidence than was before the court at the hearing on the motion for summary judgment. *Id.*

Plaintiff advances six separate theories of liability against Norsworthy's. With regard to claims of strict liability, negligence, and breach of implied warranty, plaintiff argues that the snowmobile was defective and unreasonably dangerous, and unmerchantable, because undisclosed modifications were made by Norsworthy's, and Norsworthy's failed to warn of a product hazard.[2] In an action based on strict liability, whether the alleged defect is a failure to warn or defective design, no liability will be imposed unless the product is defective. *Bernier v. Raymark Industries, Inc.*, 516 A.2d 534, 537 (Me.1986). In actions based on product design defects, "negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm." *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me.1983). In actions alleging breach of the implied warranty of mer-

---

1. M.R.Civ.P. 7(d)(2) provides:
   The party opposing a motion for summary judgment shall file with the material required to be filed by subdivision (c) of this rule a separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party.

2. Although plaintiff alleged that the machine should have been equipped with a throttle override, the statements of material fact make no reference to this subject and the issue is not preserved. *See* M.R.Civ.P. 56(c) advisory committee's note to 1990 amend., Me.Rptr., 563–575 A.2d LXXIII; *Gerrity Company, Inc. v. Lake Arrowhead Corp.*, 609 A.2d at 295.

chantability, a plaintiff must generally present evidence concerning the specific product defect, *Suminski v. Maine Appliance Warehouse*, 602 A.2d 1173, 1175 (Me. 1992), and must prove that the product did not work properly because of the defect. *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me.1990).

▪ In order to prevent a summary judgment, plaintiff was required to present evidence that the snowmobile was defective and unreasonably dangerous, and that the defect caused the harm. To determine whether a product is defectively dangerous, we balance the danger presented by the product against its utility. *St. Germain v. Husqvarna Corp.*, 544 A.2d 1283, 1285 (Me.1988). The testimony of plaintiff's expert[3] would support a conclusion that cutting the throttle springs presented a risk of injury to the user of the snowmobile, and that the risk of the throttle sticking would have been reduced if the springs were not cut. A genuine issue of fact remains whether the snowmobile was defective, and the Superior Court erred in granting summary judgment on the claims of strict liability, negligence, and breach of implied warranty.

▪ The claim of an express warranty is premised on statements made by persons in Norsworthy's shop that "[the snowmobile] runs nice," that "Randy took real good care of [the snowmobile]," and that "[the snowmobile] will go good." An express warranty is created when "any affirmation of fact or promise made by the seller to the buyer which relates to the goods ... becomes part of the basis of the bargain," 11 M.R.S.A. § 2–313(1)(a) (Supp. 1991), or when any description of the goods "is made part of the basis of the bargain.... In the case of consumer goods sold by a merchant with respect to such goods, the description affirms that the goods are fit for the ordinary purposes for which such goods are used." 11 M.R.S.A. § 2–313(1)(b) (Supp.1991). The statute gives "an express, and therefore nondisclaimable, warranty that any consumer goods sold by a merchant are fit for ordinary purposes for which they are used." John A. Spanogle, Jr., *Changes in the Present Maine Law Created by the Maine Consumer Credit Code*, 26 Me.L.Rev. 173, 202 (1974). The statements in the present case are too vague to constitute express warranties concerning the throttle, but even if established, such a warranty adds nothing to the implied warranty of merchantability provided by 11 M.R.S.A. § 2–314(2)(c) (1964). The Superior Court did not err in granting a summary judgment on the express warranty claim.

▪ Next plaintiff contends that Norsworthy's violated the Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§ 205–A–214 (1989), by breaching the implied warranty of merchantability under 11 M.R.S.A. § 2–314 and violating the provisions of 10 M.R.S.A. § 1161, et seq. (Supp.1991) regarding warranties on new motor vehicles. The basis for both claims is Norsworthy's alleged failure to disclose the modifications to the snowmobile.

▪ "Given the proper circumstances a defendant's failure to honor the statutory warranties may well be evidence of a violation of the UTPA." *State Ex Rel. Tierney v. Ford Motor Co.*, 436 A.2d 866, 873 (Me. 1981). Even if Norsworthy's is found to have breached the statutory implied warranty of merchantability, however, the UTPA would not be triggered unless Norsworthy's conduct was "unfair" or "deceptive". *Suminski v. Maine Appliance Warehouse*, 602 A.2d at 1174. Neither term as used in Maine's UTPA can be precisely defined, and their applicability should be determined on a case by case basis. *See State Ex Rel. Tierney v. Ford Motor Co.*, 436 A.2d at 873–74. Because Norsworthy's may be found to have breached the implied warranty of merchantability, and because withholding material information is a type of commercial

---

**3.** Both defendants question whether plaintiff's expert is qualified to testify as an expert in this matter. However, whether a witness is qualified to testify as an expert is a question of fact, and if it is disputed, it should not be decided by the court on a motion for summary judgment. *Levesque v. Chan*, 569 A.2d 600, 601 (Me.1990).

practice that the Federal Trade Commission has found to be unfair,[4] *American Financial Services v. F.T.C.*, 767 F.2d 957, 979 (D.C.Cir.1985) (citing Richard Craswell, *The Identification of Unfair Acts and Practices By the Federal Trade Commission*, 1981 Wis.L.Rev. 107, 108–09, a genuine issue of fact is presented.

 The new motor vehicle warranty provisions of Title 10 apply only to vehicles "designed for the conveyance of passengers or property *on the public highways* ..." 10 M.R.S.A. § 1161(3) (Supp.1991) (emphasis added), so snowmobiles are not covered.

 Finally, plaintiff argues that judgment was erroneously entered on his claim of fraud and misrepresentation. To sustain a fraud claim, a party must show: (1) that the other party made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing him to act in reliance upon it, and (5) he justifiably relied upon the representation as true and acted upon it to his damage. *Diversified Foods, Inc. v. First National Bank of Boston*, 605 A.2d 609, 615 (Me.1992). A party will be liable for negligent misrepresentation if in the course of his business he supplies false information for the guidance of others in their business transactions, and the other party justifiably relies upon it to his pecuniary detriment. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me.1990).

 A common, essential element of both claims is the requirement of a false representation. Plaintiff failed to present evidence of a false representation by Norsworthy's. Even if the comments by the "guys" in the shop were false, there is no evidence that the statements were made with knowledge of falsity or reckless disregard of truth or falsity. Further, even if Norsworthy's intentionally failed to disclose the modifications to the snowmobile, no actionable fraud claim can arise absent

an active concealment or a duty arising from a confidential or fiduciary relationship. *See H.E.P. Development Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me.1992); *Eaton v. Sontag*, 387 A.2d 33, 36, 38 (Me. 1978); *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me.1987). Plaintiff fails to establish error.

The entry is:

Judgment in favor of Bombardier affirmed. Judgment in favor of Norsworthy's vacated in part and remanded for further proceedings consistent with the opinion herein on the claims of strict liability, negligence, breach of implied warranty, and violation of the UTPA. In all other respects judgment in favor of Norsworthy's affirmed.

All concurring.

---

4. The UTPA states that courts should be guided by interpretations given by the Federal Trade Commission and the federal courts in determining what constitutes an unfair or deceptive practice. 5 M.R.S.A. § 207(1) (1989).