MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 18
Docket:      Yor-24-68
Argued:      November 14, 2024
Decided:     February 20, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, and, LAWRENCE, JJ.

## STATE OF MAINE

v.

## CALIXTE FLEURY

STANFILL, C. J.

[¶1]  Calixte Fleury appeals from a judgment of conviction of aggravated trafficking, unlawful trafficking, unlawful possession of scheduled drugs, and operating under the influence entered by the trial court (York County, *Martemucci, J.*) after a jury found him guilty.  As relevant here, at the time of Fleury's offenses, 17-A M.R.S. § 1101(17)(F) (2020) defined "traffick" to include "possess[ing] 2 grams or more of fentanyl powder."  While Fleury's case was pending in the trial court, the Legislature amended the definition of "traffick," repealing subsection (F) of section 1101(17).  P.L. 2021, ch. 396, § 1 (effective Oct. 18, 2021).  Fleury argues the application of the repealed definition of "traffick" is unconstitutional.  We disagree.  Because the possession and

trafficking counts should have been merged, however, we vacate the sentence and remand for resentencing.

## I. BACKGROUND

[¶2] "Viewing the evidence admitted at trial in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Labbe*, 2024 ME 15, ¶ 4, 314 A.3d 162 (quotation marks omitted).

[¶3] On September 18, 2020, at about 2:30 a.m., Fleury was driving at a high rate of speed southbound on I-95, about two miles past the York toll booth. His vehicle went off the road, down an embankment, and slammed into a tree. A motorist who witnessed the crash pulled to the side of the road and immediately called 9-1-1. A sergeant with the Maine State Police responded and located Fleury in the vehicle's driver's seat. Fleury told the sergeant that he had struck the sidewalk while driving, although there are no sidewalks on I-95. The sergeant noted the smell of alcohol on Fleury's breath and a bag of pills in the driver's side door pocket. The sergeant seized the pills; there were 53.5 tablets, later determined to contain a total of six grams of a mix of fentanyl and tramadol. The sergeant transported Fleury for an Intoxilyzer test, but because the machine was malfunctioning, Fleury consented to a blood test,

which determined his blood alcohol content to be 0.093 grams per 100 milliliters of blood. While waiting for the blood technician to arrive, Fleury asked to use the bathroom. The sergeant permitted him to do so but searched him beforehand and located a bag in Fleury's groin area that contained brown powder, later determined to be 18 grams of fentanyl. The sergeant also found $908 in cash.

[¶4] Fleury was first indicted for unlawful trafficking of scheduled drugs, 17-A M.R.S. § 1103(1-A)(A) (2020), and criminal forfeiture, 15 M.R.S. § 5826 (2020). Fleury was then charged by a superseding indictment with the following: Count 1, aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A (1)(M) (2020); Count 2, unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A); Count 3, unlawful possession of scheduled drugs (Class C), 17-A M.R.S. § 1107-A(1)(B)(8) (2020); Count 4, criminal operating under the influence, 29-A M.R.S. § 2411(1-A)(A) (2020); and Count 5, criminal forfeiture, 15 M.R.S. § 5826. The court held a jury trial on December 13, 2023. The jury returned guilty verdicts on all four criminal counts of the indictment. The court heard and found in favor of Fleury on Count 5, alleging criminal forfeiture of the $908. On Count 1, aggravated trafficking of scheduled drugs, Fleury was sentenced to seven years with all but four years

suspended, four years of probation, and a $400 fine. He was sentenced to three years and a $400 fine on Count 2, unlawful trafficking in scheduled drugs, to run concurrently with Count 1. Count 3, unlawful possession of fentanyl powder, was merged with Count 2. On Count 4, the OUI, he was sentenced to 30 days to run concurrently with Count 1, a $500 fine, and a 150-day license suspension.

## II. DISCUSSION

**A.    The since-repealed definition of "traffick" was constitutionally applied to Fleury.**

[¶5]  At the time of the conduct at issue, 17-A M.R.S. § 1101(17) defined "traffick" as follows:

A. To make, create, manufacture;

B. To grow or cultivate, except for marijuana;

C. To sell, barter, trade, exchange or otherwise furnish for consideration;

D. To possess with the intent to do any act mentioned in paragraph C;

E. To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin; or

F. To possess 2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder.

The State relied on the definition of "traffick" in subsection (F), possession of 2 grams or more of fentanyl powder, to prove its case against Fleury.

[¶6]  In 2021, while Fleury's case was pending, the Legislature repealed subsections (E) and (F) of section 1101(17).  P.L. 2021, ch. 396, § 1 (effective Oct. 18, 2021).  As we have said and Fleury concedes, the amended criminal statute did not apply to his pending case, "[a]bsent clear and unequivocal language to the contrary."  *State v. Tripp*, 2024 ME 12, ¶ 15, 314 A.3d 101 (quotation marks omitted); *see also* 1 M.R.S. § 302 (2024).  The 2021 amendment included no language indicating an intent to apply the amendment to pending cases.  *See* P.L. 2021, ch. 396, § 1.

[¶7]  Fleury nonetheless argues that although 1 M.R.S. § 302 bars the retroactive application of the amended definition of trafficking, "[t]he definition of 'trafficking' . . . that was in effect at the time of Mr. Fleury's arrest was unconstitutional as applied to him in light of the statutory amendment enacted while his case was pending."[1]

---

[1]  Fleury did not develop a separate argument under the due process clauses of the Maine Constitution, and so we address his due process claim only under the federal constitution.  *See State v. Norris*, 2023 ME 60, ¶¶ 33-34, 302 A.3d 1.

[¶8]  Fleury's argument may be construed as challenging the repealed statute.  "We review de novo a challenge to the validity of a statute."  *State v. Letalien*, 2009 ME 130, ¶ 15, 985 A.2d 4.  Because the alleged constitutional violation was not raised below, we review it for obvious error.  *See State v. Crocker*, 435 A.2d 58, 62 (Me. 1981) ("Nothing in the record shows that this issue was raised in the trial court; accordingly, even though it purports to be of constitutional dimension, we review it only for obvious error affecting substantial rights." (quotation marks omitted)).  "[T]o vacate a conviction based on the obvious error standard of review, there must be (1) an error, (2) that is plain, (3) that affects substantial rights and (4) the error must seriously affect the fairness and integrity or public reputation of judicial proceedings."  *Tripp*, 2024 ME 12, ¶ 21, 314 A.3d 101 (quotation marks and alterations omitted).

[¶9]  "[W]e review the validity of a statute exercising the State's police power for a rational basis, which requires that (1) the police powers be exercised to provide for the public welfare; (2) the legislative means employed be appropriate to achieve the ends sought; and (3) the manner of exercising the power not be unduly arbitrary or capricious. . . . [T]he statute is constitutional if there was evidence that a rational basis could be established."  *State v. Dee*,

2012 ME 26, ¶ 3, 39 A.3d 42 (citations and quotation marks omitted); *see also State v. Haskell*, 2008 ME 82, ¶ 6, 955 A.2d 737 (same).

[¶10]  Fleury developed no argument before us that the repealed statute was unduly arbitrary or capricious.  The Legislature has discretion to define "trafficking" to include possession of a set amount of a controlled substance. *See State v. Benner*, 553 A.2d 219, 220 (Me. 1989) (responding to defendant's contention that "the legislative definition of 'unlawful trafficking' . . . conflicts with common understanding of the term 'trafficking'" by reiterating "the authority of the Legislature to define crimes" (quotation marks omitted)). Because the repealed definition was rationally related to the legitimate objective of controlling opioids, its application to Fleury was not unconstitutional.

[¶11]  To the extent Fleury is arguing that it is unconstitutional to apply the repealed statute to him because the amended version is more lenient, we have consistently rejected that argument.  *See, e.g.*, *Tripp*, 2024 ME 12, ¶¶ 12-16, 314 A.3d 101; *State v. Alley*, 263 A.2d 66, 68-69 (Me. 1970) (holding that under 1 M.R.S. § 302 Alley could be punished for the felony in effect at the time of his crime even though the Legislature changed the offense to a misdemeanor while the case was pending, because the punishment was

8

incurred at the time of the offense); *see also State v. Hardy*, 489 A.2d 508, 512 (Me. 1985); *State v. Collamore*, 287 A.2d 123, 126 (Me. 1972); *State v. Gellers*, 282 A.2d 173, 180 (Me. 1971).

[¶12]  Fleury cites no cases suggesting our construction of section 302 is inconsistent with the U.S. Constitution, and indeed the law appears to be to the contrary.  *See, e.g.*, *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 664 (1974); *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012)*; Davis v. Hayes*, No. 89-7648, 1990 WL 86023 at*1 (4th Cir. June 15, 1990); *Jackson v. Alabama*, 530 F.2d 1231, 1238 & n.12 (5th Cir. 1976); *Holiday v. United States*, 683 A.2d 61, 66 & n.5 (D.C. 1996).

**B.**	**Counts 1, 2, and 3 must all be merged for sentencing.**

[¶13]  Fleury was charged in Count 1 of the superseding indictment with Class A aggravated trafficking in fentanyl powder in violation of 17-A M.R.S. § 1105-A(1)(M), specifically that "[a]t the time of the offense, CALIXTE FLEURY trafficked in fentanyl powder in a quantity of 6 grams or more."  He was charged in Count 2 of the superseding indictment with Class B trafficking in fentanyl powder in violation of 17-A M.R.S. § 1103(1-A)(A).  Fleury possessed 18 grams of fentanyl found on his person as well as 53.5 tablets containing a total of six grams of a mixture of fentanyl and tramadol, found in the driver's door.  While

the State may have considered that these facts supported the two separate counts of trafficking, there is no factual distinction in the indictment language: Count 1 fully incorporates Count 2. Because Count 2 did not require proof of any facts not already required by Count 1, merger is necessary. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

[¶14] The trial court properly merged Counts 2 and 3, but the failure to merge them with Count 1 was obvious error. *See State v. Chase*, 2023 ME 32, ¶ 26, 294 A.3d 154. The remedy is to "remand to the trial court for resentencing on a single conviction reflecting the merged counts." *Id.* (quotations and citations omitted). "[W]hen a trial results in multiple verdicts for the same offense, the appropriate procedure to prevent a double jeopardy violation is to merge, not dismiss, the duplicative counts. If a double jeopardy violation is discovered on appeal, we will vacate the convictions and remand for merger of the duplicative counts. The result of this procedure will be multiple findings of guilt but only one conviction and one sentence." *State v. Armstrong*, 2020 ME 97, ¶ 11, 237 A.3d 185.

[¶15]  We therefore affirm the convictions but remand for resentencing.[2]

The entry is:

> Sentence vacated.  Remanded for resentencing
> consistent with this opinion.  Judgment affirmed
> in all other respects.

———————————

Michelle R. King, Esq. (orally), Thistle Weaver & Morris, Portland, for appellant
Calixte Fleury

Aaron M. Frey, Attorney General, and Kyle Myska, Asst. Atty. Gen. (orally), Office
of the Attorney General, Augusta, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2020-602
FOR CLERK REFERENCE ONLY

———————————

[2]  We also note that the docket record does not reflect that any of the counts were merged for sentencing, which should be corrected upon remand and resentencing.